**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

LTVN HOLDINGS LLC, et al.              :
                                       :
          v.                           :          Civil Action No. CCB-09-0789
                                       :
NADER ANTHONY ODEH, et al.             :
                              …o0o…

## MEMORANDUM

Now pending before the court is a motion to dismiss for lack of jurisdiction and improper

venue or, in the alternative, to transfer venue filed by defendants Nader Anthony Odeh and his

company, Claims Consulting LLC.  Plaintiffs LTVN Holdings LLC (hereinafter "LTVN") and

Irwin R. Kramer filed a complaint containing eight counts relating to alleged copyright

infringement of marketing videos produced by LTVN.  The issues in this motion have been fully

briefed and no oral argument is necessary.  For the reasons stated below, defendants' motion will

be denied.

## BACKGROUND

The factual underpinning of this case relates to alleged copyright infringement of twelve

marketing videos produced and distributed by plaintiffs.[1]  Mr. Kramer is the managing member

of LTVN, a limited liability company organized and existing under the laws of Maryland.

LTVN produces videos pertaining to fields such as insurance, real estate, finance, employment

law, criminal justice, entrepreneurship and consumer protection, and distributes them on its

website, clientelevision.com.  The videos are specifically designed to help professionals,

including accountants, adjusters, insurance brokers and lawyers, market their services to

consumers.  By registering as a "network affiliate" and accepting the terms of LTVN's "Network

---

[1] The complaint alleges various state law claims, including breach of contract and conversion, as
well as copyright and federal Lanham Act violations.

Affiliation Agreement" (hereinafter "the Agreement"), professionals can play LTVN's videos free of charge on their own websites through "channels", even though they are not permitted to download or copy the videos.  (Compl. at ¶¶ 9-11.)  Registrants may also upgrade to a premium service plan for a fee and gain access to a greater selection of videos and additional resources. (*Id*. at ¶ 14.)  As part of the Agreement, network affiliates may not tamper with the content embedded in the video channels and they must stipulate that the content is supplied, owned and copyrighted by LTVN.  (*Id*. at ¶ 12.)  The Agreement states that it "shall be governed by and constructed under the internal laws and jurisdiction of the State of Maryland.  Any action to enforce this agreement shall be brought in the federal or state courts located in the state of Maryland."  (Network Affiliation Agreement, attached to Compl. as Ex. B at ¶ 10.)

According to the complaint, in January 2009, Mr. Odeh contacted LTVN by telephone to express his interest in using LTVN videos on his website.  (Compl. at ¶ 20.)  Mr. Odeh is a public adjuster in Louisiana and managing member of Claims Consulting, a limited liability company organized under the laws of Louisiana and having its principal place of business in New Orleans.  After their initial conversation, the parties engaged in a few more telephone and email communications, during which Mr. Odeh requested further information about how to include the videos on his website.  (*Id*. at ¶¶ 22-23.)  On approximately February 5, 2009, Mr. Odeh registered on clientelvision.com as a network affiliate.  (*Id*. at ¶ 26.)  Mr. Odeh admits to having registered on clientelevision.com, but he asserts that he was "unable to download or link to the videos", and that there was "never an agreement reached between the parties".  (Defs.' Mot. to Dismiss at 2.)  Nevertheless, Mr. Odeh does not dispute that he displayed several LTVN videos on his website, ClaimsConsultingLLC.com.  (*Id*.)  He states, however, that the videos were removed from the website after no more than two weeks.  (*Id*.)  The plaintiffs allege that

Mr. Odeh displayed LTVN video content on his website, tampered with the content by deleting references to LTVN, and passed it off as the property of Claims Consulting.  Mr. Odeh has never visited Maryland, nor does Claims Consulting conduct any business in Maryland.  In the present motion, defendants contend that plaintiffs' claims should be dismissed for lack of personal jurisdiction and improper venue.

## ANALYSIS

A.    *Personal Jurisdiction*

When a defendant properly challenges personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), "the jurisdictional challenge is to be resolved by the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003) (citing *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 59-60 (4th Cir. 1993)).  If the court rules on a personal jurisdiction motion without an evidentiary hearing, then the plaintiff must only make a *prima facie* showing of personal jurisdiction.  *Id.*  In its determination, the court must draw all reasonable inferences in favor of the plaintiff.  *Id*

A valid forum selection clause "may act as a waiver to objections to personal jurisdiction."  *Consulting Engineers Corp. v. Geometric Ltd.*, 561 F.3d 273, 281 n. 11 (4th Cir. 2009) (citing *Nat'l Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 315-16 (1964)).  In fact, a forum selection clause, "standing alone, is enough to confer personal jurisdiction on a nonresident defendant."  *Costar Realty Info., Inc. v. Field*, 612 F. Supp. 2d 660, 668 (D. Md. 2009) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n. 14 (1985)).  A forum selection clause may not be binding, however, if the defendant meets the "heavy burden of showing that enforcement would be unreasonable, unfair, or unjust."  *Costar Realty Info., Inc. v.*

*Meissner*, 604 F. Supp. 2d 757, 765 (D. Md. 2009) (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)) (internal quotation marks omitted).  But the increased expense of litigating outside the defendant's home state does not affect the validity of the forum selection clause.  *Id*.

      In two recent cases involving the same plaintiff, Costar Realty Information, judges in this District exercised personal jurisdiction over nonresident defendants who accessed the plaintiff's digital product via the Internet and in so doing agreed to online terms of use containing a forum selection clause.  *Field*, 612 F. Supp. 2d at 669 ("the Court finds the exercise of personal jurisdiction of [the defendants] permissible given their express and implied consent to the forum selection clause."); *Meissner*, 604 F. Supp. 2d at 765 ("enforcement of the consents to jurisdiction in the forum selection clauses is reasonable.")[2]  In *Field*, the court noted that "clickwrap agreements, agreements that require a customer to affirmatively click a box on the website acknowledging receipt of and assent to the contract terms before he or she is allowed to proceed using the website . . . have been routinely upheld by circuit and district courts."  612 F. Supp. 2d at 669 (internal quotation marks and citation omitted).  Moreover, failure to read the terms of the online agreement "does not excuse compliance with its terms."  *Id*. (internal quotation marks and citation omitted).

      Here, it is undisputed that after seeing the Agreement on clientelevision.com, Mr. Odeh clicked "register" and therefore had access to LTVN videos as a network affiliate.  Included in the Agreement was a forum selection clause stating that, "Any action to enforce this agreement

---

[2] Both cases involved the same forum selection clause: "You irrevocably consent to the jurisdiction of the federal and state courts located in the State of Maryland, and to the jurisdiction of the federal and state courts located in any State where you are located, for any action brought against you in connection with these Terms of Use or use of the Product."  *See Field*, 612 F. Supp. 2d at 667; *Meissner*, 604 F. Supp. 2d at 764.

shall be brought in the federal or state courts located in the State of Maryland." (Compl. Ex. B at ¶ 10.) Defendants make several arguments as to the unenforceability of the Agreement, however. First, they argue that Mr. Odeh was unable to download LTVN's videos and, therefore, no consideration existed for the Agreement. But Mr. Odeh admits that his website administrator "was able to place the free videos from Plaintiff's website on [Mr. Odeh's] website (where they remained for two weeks)". (Defs.' Mot. to Dismiss at 2.) Whether Mr. Odeh actually downloaded the LTVN videos does not affect the existence of a contract between the parties, because clientelevision.com users are never able to download videos. (Comp. at ¶ 10.) Rather, by registering as network affiliates, users gain access to the code necessary for embedding LTVN video channels on their own websites. (*Id*. at ¶ 9.) Accordingly, as consideration for registering as a network affiliate and agreeing to LTVN's terms and conditions, Mr. Odeh obtained access to the necessary code. Although Mr. Odeh contends that his website administrator linked to LTVN videos without using any registration information, he does not deny that he registered as a network affiliate or that he displayed LTVN videos on his website. The defendants' argument that there was no consideration for the Agreement must therefore fail.

Second, Mr. Odeh asserts that because he clicked "register" only once, the forum selection clause does not bind him. (Defs.' Mot. to Dismiss at 3.) He argues that, by contrast, the defendants in *Field* agreed to the forum selection clause every time they accessed the plaintiff's online database over the course of four years. But a party need not assent to an agreement multiple times in order for a contract to be enforceable. *See, e.g., A.V. v. iParadigms, LLC*, 544 F. Supp. 2d 473, 480 (E.D. Va. 2008), *reversed in part on other grounds by A.V. ex rel. Vanderhye v. iParadigms, LLC*, 562 F. 3d 630 (4th Cir. 2009) (finding that the parties entered into a valid contract when the plaintiffs clicked "I Agree" to a clickwrap agreement on one

occasion); *Koresko v. RealNetworks, Inc.*, 291 F. Supp. 2d 1157, 1162-63 (E.D. Cal. 2003) (finding forum selection clause enforceable where plaintiff clicked once on a button marked "I agree".)  In *Field*, the fact that the defendants agreed to the website's terms of use each time they accessed the plaintiff's online database reinforced the court's conclusion that the defendants had consented to personal jurisdiction, but it was not dispositive.  *See Field*, 612 F. Supp. 2d at 669 ("Moreover, even if the Defendants neglected to read the Terms of Use initially, which neither [defendant] argue[s], both [defendants] had to periodically assent to the Terms of Use in the almost four years they accessed [the plaintiff's] database.")  In this case, a single click was sufficient to bind Mr. Odeh and his company to the Agreement.

Finally, the defendants argue that, unlike the forum selection clause at issue in *Field*, which stated that the user "irrevocably consent[s] to the jurisdiction of the federal and state courts located in the State of Maryland", *see id*. at 667, here, the clause mentions nothing about "consent" to jurisdiction.  While the defendants correctly point out a difference in language, a forum selection clause need not contain the word "consent" to be valid.  *See Intracomm, Inc. v. Bajaj*, 492 F.3d 285, 290 (4th Cir. 2007) (noting with approval a Tenth Circuit holding that a forum selection clause stating that, "Jurisdiction shall be in the state of Colorado", was mandatory and not permissive); *see also LucidRisk, LLC v. Ogden*, 615 F. Supp. 2d 1, 6-7 (D. Conn. 2009) (finding that the following forum selection clause "clearly constitute[d] consent" by the contracting corporation to personal jurisdiction in Connecticut: "Any dispute or lawsuit between the parties arising out of this Agreement shall be adjudicated by an appropriate court located in Fairfield County, State of Connecticut.")  Here, the use of the word "shall" gave adequate notice to Mr. Odeh that the State of Maryland would be the exclusive forum for disputes regarding the Agreement, whether or not he read all the Agreement's terms.

Accordingly, the court finds that Mr. Odeh assented to the terms of the Agreement when he clicked "register" on clientelevision.com and, therefore, the forum selection clause is valid and enforceable.

Defendants have not proffered, let alone met their heavy burden of showing, any reason why enforcement of the forum selection clause would be unreasonable, unfair, or unjust.  Mr. Odeh suggests that Mr. Kramer "induced" him to register as a network affiliate, but he does not substantiate this allegation other than to imply that Mr. Kramer encouraged him to register "in order to 'sample' the free videos on [LTVN's] website".  (Defs.' Mot. to Dismiss at 3.)  Without any other suggestion of unreasonableness, the court cannot find that enforcement of an otherwise valid forum selection clause would be unfair in this case.  Thus, the court holds that Mr. Odeh and his company consented to personal jurisdiction in Maryland when he agreed to the LTVN Network Affiliation Agreement.[3]

*B.*     *Venue*

Defendants also moved to dismiss for improper venue or, in the alternative, to transfer venue to the Eastern District of Louisiana.  Plaintiffs argue that venue is proper in Maryland and that the forum selection clause is binding.

*i.*     *Forum Selection Clause*

It is well established that federal law presumes mandatory forum selection clauses to be *prima facie* enforceable for claims within their scope "unless enforcement is shown by the

---

[3] Because the forum selection clause is dispositive with regard to defendants' motion to dismiss for lack of personal jurisdiction, the court will not assess whether the defendants had minimum contacts with the State of Maryland.

resisting party to be 'unreasonable' under the circumstances."[4]  *M/S Bremen*, 407 U.S. at 10; *Pee Dee Health Care, P.A. v. Sanford*, 509 F.3d 204, 213 (4th Cir. 2007); *Belfiore v. Summit Fed. Credit Union*, 452 F. Supp. 2d 629, 631 (D. Md. 2006).  The court's analysis is therefore threefold.  First, the court must establish whether the clause is mandatory.  If so, then it is presumptively enforceable.  *M/S Bremen*, 407 U.S. at 10.  Second, the court must establish whether the clause is presumptively enforceable against the particular claims in dispute, i.e. whether the claims fall within the scope of the clause.  If they do, then that clause presumptively applies to bar their adjudication outside its designated forum.  *See, e.g., Belfiore*, 452 F. Supp. 2d at 632 (determining that plaintiff's non-contract claims were within the scope of a contract's forum selection clause, thus barring adjudication in Maryland).  Third, the court must decide whether the party opposing a clause's enforcement has rebutted the presumption of enforceability by proving that enforcement would be unreasonable.  If it has not, the clause will be enforced.

First, the forum selection clause in this case is mandatory.  A mandatory forum selection clause is one that contains "clear language stating that jurisdiction [is] only appropriate in . . . the designated forum."  *Intracomm*, 492 F. 3d at 290 (citing *Excell, Inc. v. Sterling Boiler and Mechanical, Inc.*, 106 F.3d 318, 321 (10th Cir. 1997)).  Here, the forum selection clause states that, "Any action to enforce this agreement shall be brought in the federal or state courts located in the state of Maryland."  (Compl. Ex. B at ¶ 10.)  This language clearly specifies that jurisdiction is only appropriate in Maryland, and its use of the word "shall" indicates "mandatory intent".  *Sterling Forest Assocs., Ltd. v. Barnett-Range Corp.*, 840 F.2d 249, 251 (4th Cir. 1988), *abrogated on other grounds by Lauro Lines S.R.L. v. Chasser*, 490 U.S. 495 (1989); *see also*

---

[4] Federal law governs the enforceability of the forum selection clause in this case because the underlying action is based on federal question jurisdiction.  *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 590 (1991).

*Intracomm*, 492 F.3d at 290 (contrasting a mandatory clause, "Jurisdiction shall be in the state of Colorado," with a permissive clause, "The parties agree that . . . the courts of the State of Michigan shall have personal jurisdiction"); *Belfiore*, 452 F. Supp. 2d at 631 n. 2 (finding a forum selection clause providing that "any legal action regarding this agreement *shall* be brought in the country in which the Credit Union is located" to be mandatory (emphasis in original)); *Davis Media Group, Inc. v. Best Western Int'l, Inc.*, 302 F. Supp. 2d 464, 468 (D. Md. 2004) (finding that a forum selection clause using the word "shall" in a similar context was mandatory). Thus, the forum selection clause is mandatory and presumptively enforceable.

Second, plaintiffs' claims fall within the scope of the forum selection clause. LTVN and Mr. Kramer filed suit for copyright infringement under state and federal law, breach of contract, the Lanham Act and its state law equivalent, unjust enrichment, conversion and invasion of privacy (appropriation of name and likeness). Though the language of the forum selection clause here is not exceedingly broad, it is nevertheless broad enough to encompass all plaintiffs' claims, which arise from the contractual relationship between the parties. *See Capital Source Finance, LLC v. Delco Oil, Inc.*, 625 F. Supp. 2d 304, 318 (D. Md. 2007) (finding fraud and conversion claims to be within scope of forum selection clause in a loan guarantee agreement); *Belfiore*, 452 F. Supp. 2d at 632 (finding that plaintiff's non-contractual claims, including alleged violations of the Fair Credit Reporting Act, were within the scope of the choice of forum clause); *Berry v. Soul Circus, Inc.*, 189 F. Supp. 2d 290, 294 (D. Md. 2002) (finding a forum selection clause in a performer's employment contract to encompass plaintiff's tort claims, including one for unjust enrichment).

Here, all plaintiffs' claims relate to the defendants' alleged use of LTVN videos without proper attribution to LTVN. Because such use is explicitly prohibited by the Agreement, the

present action is generally to "enforce the Agreement".[5]  For instance, the Agreement states that,

"You must always stipulate that the Content is supplied by LTVN and is protected by copyright

and owned by LTV."  (Compl. Ex. B at ¶ 3.)  Plaintiffs allege that, instead, Mr. Odeh displayed

LTVN videos on his website having deleted all references to LTVN and attributed the copyright

to his own company.  Breach of the Agreement, therefore, gave rise to plaintiffs' copyright and

Lanham Act claims and their state law equivalents.  Furthermore, plaintiffs' unjust enrichment,

conversion and invasion of privacy claims also arise from allegations that Mr. Odeh passed off

LTVN videos as his own and benefited from doing so, a clear breach of the Agreement.  Thus,

all plaintiffs' claims, even those that are not purely contractual, fall within the scope of the forum

selection clause.

    Finally, defendants have not rebutted the presumption of enforceability, as they have

proffered absolutely no reason why enforcement of the clause would be unreasonable.  A forum

selection clause is unreasonable if: "(1) it was the result of fraud or overreaching; (2) trial in the

contractual forum would be so gravely difficult and inconvenient for the complaining party that

he would for all practical purposes be deprived of his day in court; or (3) enforcement would

contravene a strong public policy of the forum in which the suit is brought."  *Pee Dee*, 509 F.3d

at 213-14 (internal quotation marks and citations omitted).  Defendants have not suggested that

any of these factors applies in the present case.

    For the foregoing reasons, the court finds that the forum selection clause is controlling

and venue is proper in the District of Maryland.

---

[5] The Agreement explicitly warns of legal action resulting from misappropriation of LTVN videos: "If you use, or attempt to use, any of LTVN's affiliate services or Content beyond the scope of the license granted in this Agreement . . . or attempt to, tamper, hack, spoof, use robots or scripts, copy, distribute, modify, or otherwise corrupt the administration, security or property function of any part of CLIENTELEVISON or the Content, then, in addition to termination of this Agreement, you be [sic] subject to appropriate legal and equitable action."  (Compl. Ex. B at ¶ 3.)

*ii.     Transfer of Venue*

Defendants moved, in the alternative, to transfer venue to the Eastern District of Louisiana.  Even where venue is proper, the court may nevertheless transfer venue in a civil action for the convenience of the parties and witnesses in the interest of justice to any district where the case might have been brought.  28 U.S.C. § 1404(a).  A court must consider the following factors when considering a motion to transfer venue: "(1) the weight accorded the plaintiff's choice of venue, (2) witness convenience and access, (3) convenience of the parties, and (4) the interests of justice."  *Davis Media Group*, 302 F. Supp. 2d at 470 (citing *Lynch v. Vanderhoef Builders*, 237 F. Supp. 2d 615, 617 (D. Md. 2002) (internal quotation marks omitted).

Defendants contend that venue is more appropriate in Louisiana because Mr. Odeh and his company reside there, and "potential witnesses will be located in Louisiana."  (Defs.' Reply to Pls.' Opp'n at 3.)  But weighing the aforementioned factors, the court finds that the case should remain here in Maryland.  Defendants have not identified with particularity any material witnesses who are located in Louisiana, and presumably the plaintiffs will call witnesses who are located in Maryland.  Moreover, while Mr. Odeh will be somewhat inconvenienced by litigating this matter in Maryland, the plaintiffs would be equally inconvenienced were the matter transferred to Louisiana.  Thus, if the court transferred the case to Louisiana, "the effect would be merely to shift the balance of inconvenience to the Plaintiff."  *TECH USA, Inc. v. Evans*, 592 F. Supp. 2d 852, 861 (D. Md. 2009) (internal quotation marks and citations omitted).  Importantly, the plaintiff's choice of venue is one of the factors the court must consider, and here the plaintiffs filed suit in Maryland.

Accordingly, the court will enforce the parties' forum selection clause, and because the interests of justice are better served by the case remaining in the District of Maryland, will deny the defendants' motion to transfer venue.  A separate Order follows.


      November 5, 2009                                    /s/
          Date                                    Catherine C. Blake
                                                  United States District Judge