IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| LTVN HOLDINGS, LLC | : | |
| | : | |
| v. | : | |
| | : | Civil Action No. CCB-09-789 |
| NADER ANTHONY ODEH | : | |
| | : | |

...o0o...

## MEMORANDUM

Now pending before the court is a motion to dismiss or for judgment filed by defendants Nader Anthony Odeh and his company, Claims Consulting LLC ("Claims Consulting") (collectively "defendants"). Plaintiffs LTVN Holdings, LLC ("LTVN") and Irwin R. Kramer have sued Mr. Odeh and Claims Consulting, asserting violations of federal and state copyright law and the Lanham Act, as well as various state law causes of action, including breach of contract, conversion, and invasion of privacy. The issues in this motion have been fully briefed and no oral argument is necessary. For the reasons stated below, defendants' motion will be granted in part and denied in part.

## BACKGROUND

LTVN is a Maryland company that produces, presents, and distributes videos on various legal, consumer, and business issues on CLIENTELEVISION.com. Mr. Kramer, a former law professor who has appeared on various televised legal programs, founded LTVN and serves as the company's managing member. LTVN first published the videos on its website on July 2, 2007. (*See* Compl. Ex. C.) Mr. Kramer created the videos and assigned his rights to them to LTVN, which secured a Certificate of Registration from the Register of Copyrights on March 16, 2009. LTVN

allows others to post its videos on their websites by licensing topical CLIENTELEVISION "channels" to them through basic and premium service plans. Under the basic service plan, individuals or companies may register as "network affiliates" on CLIENTELEVISION.com and access codes for embedding channels containing a limited selection of videos for use on their own websites. Each video is followed by a seven-second message promoting CLIENTELEVISION.com as the source of its content. Although LTVN does not charge affiliates for the basic service plan, it only grants access codes to those affiliates that accept LTVN's Network Affiliation Agreement, which prohibits affiliates from tampering with the videos through editing. In addition, the Agreement prohibits affiliates from presenting the videos as their own and requires them to "stipulate that the Content is supplied by LTVN and is protected by copyright and owned by LTVN." (*See* Compl. Ex. B at 2.)

LTVN's premium service plan offers affiliates customized channels for an annual license fee. Premium service affiliates may select any video within the CLIENTELEVISION library and present the videos without promotional messages, taglines, or advertising. LTVN also offers these affiliates services such as co-branding the channel by superimposing the affiliate's name or logo on the video player screen, customizing videos to promote the affiliate's services, or running the affiliate's own promotional message within the channel. Premium service affiliates must agree to display the videos in accordance with LTVN's Network Affiliation Agreement.

Mr. Odeh, the managing member of the Louisiana company Claims Consulting, works as a public adjuster and markets his services through Claims Consulting's website. In January 2009, Mr. Odeh contacted LTVN and expressed interest in licensing a customized channel to display videos dealing with property insurance claims on the Claims Consulting website. Mr. Odeh repeatedly spoke with and emailed Mr. Kramer, inquiring about the details of customizing LTVN's videos for

his own website and, at one point, emailing Mr. Kramer graphics to use for superimposing his company's name on the video player screen. On or about February 2, 2009, Mr. Kramer emailed Mr. Odeh a price quote for the services he had requested. Mr. Odeh initially failed to respond to the email, and when Mr. Kramer reached him, Mr. Odeh explained that he was no longer interested in Mr. Kramer's services. On or about February 5, 2009, Mr. Odeh registered as a network affiliate on LTVN's website.

Mr. Odeh posted 12 LTVN videos related to filing insurance claims on his website on March 12, 2009. (*See* Def.'s Mot. to Dismiss Ex. 1.) Claims Consulting presented the videos as its own by removing references to LTVN and CLIENTELEVISION.com, deleting LTVN's animations that appeared at the beginning and end of each video, and removing LTVN's seven-second promotional video. Claims Consulting also referred to the videos as "our information videos" and displayed them in its own flash video player. (*See* Compl. Ex. E.) Furthermore, on the bottom of the page displaying the videos, Claims Consulting posted the following notice: "Copyright © 2009 Claims Consulting, LLC. All Rights Reserved." (Compl. Ex. F.)

LTVN and Mr. Kramer filed suit against Claims Consulting and Mr. Odeh on March 30, 2009, asserting claims arising under both federal and state copyright and trademark law, as well as various state common law actions. On November 5, 2009, this court denied the defendants' previous motion to dismiss for lack of personal jurisdiction and improper venue. Defendants have now filed another motion to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

## **ANALYSIS**

A motion pursuant to Federal Rule of Civil Procedure 12(b)(1) should be granted only if the "material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter

of law." *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999) (internal quotation marks and citation omitted). The plaintiff bears the burden of proving that subject matter jurisdiction exists. *Piney Run Pres. Ass'n v. County Commissioners of Carroll County*, 523 F.3d 453, 459 (4th Cir. 2008). When considering a Rule 12(b)(1) motion, the court should "regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Evans*, 166 F.3d at 647 (internal quotation marks and citation omitted).

"[T]he purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (internal quotation marks and alterations omitted) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir.1997). "Even though the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him, they also provide criteria for defining issues for trial and for early disposition of inappropriate complaints." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level, ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and alterations omitted). Thus, the plaintiff's obligation is to set forth sufficiently the "grounds of his entitlement to relief," offering more than "labels and conclusions." *Id.* (internal quotation marks and alterations omitted).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, -- U.S. --, 129 S. Ct. 1937, 1950 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).

Copyright Claims (Counts I & II)

The plaintiffs sue for copyright infringement under both the federal Copyright Act, 17 U.S.C. § 101, *et seq.*, (Count I) and state copyright law (Count II). As these two claims are substantively identical, the court will dismiss the claim based on state copyright law because it is preempted by the Copyright Act. *See* 17 U.S.C. § 301. Under the Copyright Act, statutory damages and attorney's fees are unavailable because the plaintiffs did not register their copyright prior to the alleged infringement or within three months of the first publication. *See* 17 U.S.C. § 412. The defendants argue that the videos were posted to the Claims Consulting website on March 12, 2009, but not registered with the Copyright Office until March 16, 2009. In addition, the plaintiffs first published the videos on July 2, 2007 by posting them to the LTVN website. Thus statutory damages are not available to Mr. Kramer and LTVN. *See Bouchat v. Bon-Ton Dep't Stores, Inc*, 506 F.3d 315, 330 (4th Cir. 2007).

In addition, punitive damages are not available under the Copyright Act. *See Christopher Phelps & Assocs., LLC v. Galloway*, 492 F.3d 532, 545 (4th Cir. 2007). Although the plaintiffs cite *Blanch v. Koons*, 329 F. Supp. 2d 568, 569 (S.D.N.Y. 2004) and *TVT Records v. Island Def Jam Music Group*, 262 F. Supp. 2d 185, 186 (S.D.N.Y. 2003) for the proposition that punitive damages are permitted when statutory damages cannot be pursued, these cases remain outliers and Judge Stanton, who decided *Blanch*, has since declared *Blanch* "no longer good law." *See Viacom Int'l Inc. v. YouTube, Inc.*, 540 F. Supp. 2d 461, 463 (S.D.N.Y. 2008); *see also* 4-14 Nimmer on

5

Contracts § 14-02[C][2] (referring to *TVT Records* as a "rogue decision [that] should not be followed").

The defendants also dispute the plaintiffs' claim for compensatory damages of $250,000. The plaintiffs assert that the $250,000 represents their "actual damages" because this was the cost of creating the videos, which the defendants avoided paying by posting LTVN's videos as its own. Copyright infringers are liable for "the actual damages suffered by [the copyright owner] as a result of the infringement." 17 U.S.C. § 504(b). Although the Copyright Act does not define "actual damages," several courts have interpreted the term to allow recovery for the fair market value the infringer would have paid to use the copyrighted material. *See Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 709 (9th Cir. 2004) (holding that the fair market value license fee for use of film footage constituted an appropriate award of actual damages); *On Davis v. The Gap, Inc.*, 246 F.3d 152, 166 (2d Cir. 2001) (noting that "[i]n order to make out his claim that he has suffered actual damage because of the infringer's failure to pay the fee, the owner must show that the thing taken had a fair market value"); *Deltak, Inc. v. Advanced Sys., Inc.*, 767 F.2d 357, 363 (7th Cir. 1985) (calculating actual damages by determining the value of use of the copyrighted material, as evidenced by its fair market value).

Although the plaintiffs agree with this fair market value approach to calculating actual damages, they argue that it should be awarded the costs of producing the videos, rather than the cost of posting the videos pursuant to a licensing agreement. The present case is similar to *Polar Bear*, in which the defendant used the plaintiff's film footage without authorization, after the plaintiff quoted the defendant a $37,500 licensing fee for use of the film. *See* 384 F.3d at 704, 709. Rather than award the plaintiff the cost of producing the footage itself, the court held that an award of $37,500 in lost licensing fees was appropriate. *See id.* at 709. Other courts, in determining actual damages,

also have looked to licensing fees rather than costs of production. *See On Davis*, 246 F.3d at 172 (holding that a copyright owner may recover actual damages "for the fair market value of a license covering the defendant's infringing use"). Thus, if LTVN and Mr. Kramer establish copyright liability, they may seek actual damages for any fair market licensing fee they would have charged the defendants for use of their videos. At this stage in the litigation, however, it is not necessary to determine the precise amount of actual damages. As the plaintiffs may seek actual damages for lost licensing fees, Count I states a claim upon which relief can be granted.[1]

Lanham Act Claim (Count IV)

The plaintiffs claim that by removing designations of the source of the videos and identifying the videos as their own, the defendants violated the Lanham Act, 15 U.S.C. § 1125.[2] Yet in *Dastar Corp. v. Twentieth Century Fox Film Corp.*, the Supreme Court held that such claims are not actionable under the Lanham Act. *See* 539 U.S. 23 (2003). Noting the difficulty of establishing the "origin" of communicative products, the Court in *Dastar* held that the phrase "origin of goods" in the Lanham Act "refers to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods." *Id.* at 37. The Court reasoned that holding otherwise would create a "species of perpetual patent and copyright." *Id.*

In *Dastar*, the defendant copied a television series, made some edits, changed the title, and sold the series under its own name, with no attribution to the original creator. *See id.* at 26-27. The Court concluded that the defendant, as the producer of the copied series, was the "origin" for

---

[1] The defendants challenge the plaintiffs' claim for injunctive relief in Count I. It is not clear the plaintiffs requested injunctive relief in their complaint, however, and they have not addressed the defendants' arguments in their opposition brief. Therefore, the court will not interpret the complaint as requesting injunctive relief.
[2] 15 U.S.C. § 1125 imposes liability on any person who uses "any false designation of origin," which is likely to cause confusion as to the "origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person" or "misrepresent the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities" in commercial advertising or promotion. 15 U.S.C. § 1125(a)(1)(A)-(B).

purposes of the Lanham Act and thus the original creators of the series could not state a claim under the Act for false designation of origin. *See id.* at 38. Instead, the Court reasoned that copyright law was designed "to protect originality or creativity." *Id.* at 37; *see also Vogel v. Wolters Kluwer Health, Inc.*, 630 F. Supp. 2d 585, 590 (M.D.N.C. 2008) (holding that, under *Dastar*, a claim against a textbook publisher that plagiarized an author's work was actionable as a copyright claim rather than as a Lanham Act claim). Similarly, the defendants in the present case are the "origin" of the videos, as they published them on their website, and the Lanham Act does not protect the creators of the intangible video content. The content creators are instead protected by the Copyright Act. Therefore, the defendants did not falsely designate the origin of the videos and are not liable under the Lanham Act. Accordingly, Count IV of the complaint will be dismissed.

Remaining State Law Claims (Counts III, V, VI, VII, & VIII)

The plaintiffs' remaining claims all arise under state common law: breach of contract (Count III), reverse passing off (Count V), unjust enrichment (Count VI), conversion (Count VII), and invasion of privacy (Count VIII). The defendants argue that these claims are all preempted by federal law. The Fourth Circuit has articulated a two-step test for determining when state law claims are preempted by federal copyright law. *See United States v. Berge*, 104 F.3d 1453, 1463 (4th Cir. 1997). First, the work must fall "within the scope of the subject-matter of copyright as specified in 17 U.S.C. §§ 102, 103." *Id.* (internal quotation marks omitted). The videos in this case fall within the scope of the Copyright Act because they are "original works of authorship fixed in any tangible medium of expression" and qualify as "motion pictures and other audiovisual works" category. 17 U.S.C. § 102(a).

Second, "the rights granted under state law must be equivalent to any exclusive rights within the scope of federal copyright as set out in 17 U.S.C. § 106." *Berge*, 104 F.3d at 1463 (internal quotation marks omitted). Section 106 grants copyright owners the exclusive right to (1) "reproduce the copyrighted work"; (2) prepare derivative works based upon the copyrighted work"; (3) distribute copies of the work; (4) perform the work publicly; and (5) display the work publicly. *See Fischer v. Viacom Int'l, Inc.*, 115 F. Supp. 2d 535, 541 n.4 (D. Md. 2000). Therefore, a state law right that is infringed by "the mere act of reproduction, performance, distribution, or display" will be preempted by the Copyright Act. *See id.* at 541. The Fourth Circuit has noted that a state law claim avoids preemption when it contains an "extra element that changes the nature of the state law action so that it is *qualitatively* different from a copyright infringement claim." *Berge*, 104 F.3d at 1463 (internal quotation marks omitted) (emphasis in original).

The plaintiffs' breach of contract claim is based on the defendants' unauthorized display of the videos on their website. Although the defendants may have breached the Network Affiliation Agreement by displaying the videos without complying with the contract's conditions for such use, this alleged wrong is already part of the plaintiffs' copyright claim. This court previously has noted that "[a] breach of contract claim will survive preemption only when the cause of action is based upon provisions of the contract outside the subject matter of copyright." *The Nichols Agency, Inc. v. Enchanted Child Care, Inc.*, 537 F. Supp. 2d 774, 783 (D. Md. 2008) (citing *Acorn Structures, Inc. v. Swantz*, 846 F.2d 923, 926 (4th Cir. 1988)). As the breach of contract claim contains no extra element that would differentiate it from the copyright claim, it is preempted by the Copyright Act. *See Madison River Mgmt. Co. v. Business Mgmt. Software Corp.*, 351 F. Supp. 2d 436, 444 (M.D.N.C. 2005) (holding the plaintiff's breach of contract claims to be preempted because all "emanate[d] from the alleged wrongful reproduction and distribution" of the copyrighted work);

*Fischer*, 115 F. Supp. 2d at 542 (finding a breach of contract claim preempted by copyright law where the basis of the claim was that the defendant took the plaintiff's ideas and "used them without proper compensation or attribution").

Similarly, the plaintiffs' claims for reverse passing off, unjust enrichment, and conversion are also preempted by the Copyright Act because all are predicated on the defendants' unauthorized use of the videos. The reverse passing off claim asserts that the defendants improperly displayed the videos on their website and tried to pass them off as their own by removing references to the plaintiffs' website. These facts are similar to those of *Costar Group Inc. v. Loopnet, Inc.*, in which the defendant copied the plaintiff's photographs and displayed them on its website as its own. *See* 164 F. Supp. 2d 688, 714 (D. Md. 2001). The court in *Costar* described such reverse passing off as a "disguised copyright claim" because the underlying act of copying photographs without authorization was the same for both the plaintiff's copyright and reverse passing off claims. *Id.* (internal quotation marks omitted); *see also Rutledge v. High Point Regional Health Sys.*, 558 F. Supp. 2d 611, 621 (M.D.N.C. 2008) (holding that "[w]hen predicated on the facts underlying a claim of copyright infringement, reverse passing off fails to constitute the extra element necessary to avoid preemption by the Copyright Act"). In the present case, the act of displaying the videos on the defendants' website forms the basis for both claims. Therefore, the reverse passing off claim is preempted by the Copyright Act.

The plaintiffs' unjust enrichment and conversion claims also lack an extra element that would distinguish them from claims arising under the Copyright Act. The unjust enrichment claim alleges that the defendants profited by using the plaintiffs' videos without authorization. The claim for conversion alleges that the defendants' took the videos from the plaintiffs' possession without permission. Both claims merely reiterate the alleged facts underlying the plaintiff's copyright claim.

Although "a state law action for conversion will not be preempted if the plaintiff can prove the extra element that the defendant unlawfully retained the physical object embodying plaintiff's work," the unlawful retention of intellectual property rights is the domain of copyright law. *Berge*, 104 F.3d at 1463 (internal quotation marks omitted). By allegedly copying and displaying the plaintiffs' videos, the defendants did not take any tangible property from the plaintiffs. Accordingly, the Copyright Act preempts the unjust enrichment and conversion claims. *See Madison River Mgmt. Co.*, 351 F. Supp. 2d at 445 (holding a conversion claim preempted by the Copyright Act where the claim involved the unauthorized use of an intangible software program); *Costar*, 164 F. Supp. 2d at 714 (finding a claim for unjust enrichment preempted by the Copyright Act).

The defendants also claim that the plaintiffs' invasion of privacy claim is preempted by the Copyright Act. Under Maryland law, the right of privacy is invaded when an individual's name or likeness is appropriated for the use or benefit of another. *See Lawrence v. A.S. Abell Co.*, 475 A.2d 448, 451 (Md. 1984). An invasion of privacy claim protects an individual's persona, rather than an "original work[] of authorship fixed in any tangible medium of expression," as protected by the Copyright Act. *See* 17 U.S.C. § 102(a). Indeed the Copyright Act specifies that any "idea" or "concept" embodied in such tangible work is not protected by the Act. *See* § 102(b). Thus invasion of privacy claims are not preempted by the Copyright Act as they concern an individual's likeness, which does not fall within the scope of the Act. *See also Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1004-05 (9th Cir. 2001) (holding that "[a] person's name or likeness is not a work of authorship within the meaning of 17 U.S.C. § 102"); *Brown v. Ames*, 201 F.3d 654, 658 (5th Cir. 2000).

Nevertheless, Mr. Kramer fails to state an actionable claim for invasion of privacy.[3] A plaintiff pursuing an invasion of privacy claim must demonstrate that the use of his likeness was not "merely incidental," but that it was appropriated for some economic gain. *Lawrence*, 475 A.2d at 453 (internal quotation marks omitted). Thus there must be some special value associated with the individual's name or likeness. *See id.* In *Lawrence*, for example, the court denied an invasion of privacy claim where the individuals whose images were used in newspaper ads were neither famous nor professional models. *See id.* at 453; *see also Barnhart v. Paisano Publ'ns, L.L.C.*, 457 F. Supp. 2d 590, 596 (D. Md. 2006) (holding that the plaintiff failed to state an invasion of privacy claim because there was no evidence that "the plaintiff is famous or a professional model or that there is any special value associated with her likeness"). In the present case, the plaintiffs have not alleged that Mr. Kramer's appearance in the videos conferred any extra value upon them. Although Mr. Kramer has appeared on several television programs regarding legal issues, there is no allegation that the defendants posted the videos believing viewers would recognize Mr. Kramer and assume he endorsed Claims Consulting. Instead, based on the plaintiffs' allegations, it appears Mr. Kramer was simply the conduit for the information disseminated in the video. As the plaintiffs have failed to allege that Mr. Kramer's presence in the videos was anything more than incidental, the invasion of privacy claim will be dismissed.

---

[3] Aside from the preemption issue, the plaintiffs have not responded in their opposition brief to the defendants' arguments regarding this claim.

## **CONCLUSION**

For the foregoing reasons, the defendants' motion to dismiss will be granted in part and denied in part. A separate Order follows.


June 25, 2010                                                  /s/
Date                                              Catherine C. Blake
                                                  United States District Judge